UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DWAYNE BROUSSARD, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-09-778 |
| § | |
| ENERGY CRANES LLC, *et al.* § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM AND ORDER**

Pending before the court are defendants Shell Oil Company and Shell Exploration and Production Company's motion for summary judgment (Dkt. 34) and defendant TETRA Applied Technologies, Inc.'s motion for summary judgment (Dkt. 35). After review of the motions, the responses, and the applicable law, both motions are GRANTED.

**BACKGROUND**

Plaintiff Dwayne Broussard worked for Energy Cranes as a crane operator on a fixed drilling platform off the coast of Louisiana ("the Platform"). On March 24, 2008, Broussard was exiting the cab of the crane and attempted to climb down the access ladder. Dkt. 37, Ex. E at 1–20. Broussard lost his footing on the top step and fell approximately five feet, sustaining multiple injuries. *Id.*

There were several parties involved in the operation of the platform on which the crane was located. The Shell defendants (Shell Oil Company and Shell Exploration and Production Company) owned a leasehold on the platform and provided the employees for any operations conducted. Dkt. 34, Ex. 2 at 1. Defendant TETRA Applied Technologies, Inc. ("TETRA") was contracted by Shell to provide plug and abandonment services on the platform. *Id.* TETRA, in turn, contracted with

Energy Cranes for the provision of cranes and operators needed on the platform. *Id.* Energy Cranes has previously been dismissed from this case. See Dkt. 15.

At various points, three parties inspected the crane in question for safety compliance. First, Shell inspected the crane prior to use by any independent contractors or employees. Dkt. 36, Ex. K at 31–32. Furthermore, over the course of the project, Shell occasionally inspected the crane for compliance. *Id.* Additionally, on one occasion, Shell recommended a change to a digital system in the crane to bring it in line with safety requirements. Dkt. 36, Ex. E a 59–60. Second, TETRA safety personnel also conducted safety audits on the project. Dkt. 37, Ex. K at 26. Moreover, on one occasion, TETRA ordered all crane operations on the platform shut down due to high winds. Dkt. 37, Ex. Q. Third, Broussard himself was responsible for inspecting the crane and surrounding area for safety compliance before each use. Dkt. 34, Ex. C. Prior to the accident, Broussard had used and inspected the crane many times. Dkt. 35, Ex. D at 105–06. He had never noticed or reported any defects in the crane. *Id.*

Broussard brought negligence claims against Shell and TETRA under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq*. Dkt. 1. Broussard alleges that: (1) Shell and TETRA, as owner and supervisor of the leasehold, respectively, negligently breached their duty to provide a reasonably safe workplace; and (2) because Shell and TETRA both retained operational control over the design, installation, and operation of the crane, both are liable in negligence for the actions of Energy Cranes in those areas. Dkt. 36; Dkt. 37. Shell and TETRA now move this court to grant them summary judgment on Broussard's claims. Dkts. 34, 35.

2

ANALYSIS

**1.     Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.* "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66

F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

Under the Outer Continental Shelf Lands Act, the law of the adjacent state becomes "surrogate" federal law and governs incidents occurring on fixed drilling platforms on the Outer Continental Shelf. *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357, 89 S. Ct. 1835, 1838

(1969). In this case, Louisiana is the state adjacent to the platform and, therefore, Louisiana law governs. *See* Dkt. 35 at 4.

Under Louisiana law, to prevail on a negligence claim, the plaintiff must prove: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 633 (La. 2006).

**2.    Shell and TETRA's Liability**

Broussard argues that Shell and TETRA are liable in negligence under theories of premises and vicarious liability.

*A.    Premises Liability*

Under Louisiana law, the owner of a building used for business owes a duty of care to ensure a reasonably safe work environment. *Dupre v. Chevron USA, Inc.*, 20 F.3d 154, 157 (5th Cir. 1994). More specifically, the owner "is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction." LA. CIV. CODE ANN. art. 2322 (1997). Fixed drilling platforms are considered buildings for the purposes of Article 2322. *Coulter v. Texaco, Inc.*, 117 F.3d 909, 915 (5th Cir. 1997). However, for the owner of the building to be liable, the ruin or defect must be found in an inseparable part of, or an appurtenance to, the building. *Id.* at 913. In Louisiana, an object is an appurtenance if it cannot

5

be removed without significantly damaging either itself or the building to which it is attached. *Id.* at 917.

Broussard argues that the crane is an "integral part" of the platform and, therefore, an appurtenance. Dkt. 36 at 11. Shell and TETRA, however, argue that the crane was merely temporary, installed for the specific purpose of a plug and abandonment project and was removed at the end of the project. Dkts. 34-2 at 9; 38 at 6. Courts have held that neither a removable drilling rig, nor a bolted-down scaffold are considered an appurtenance to the platform on which it sits. *See Coulter*, 117 F.3d at 917; *Sistrunk v. Conoco, Inc.*, 693 F. Supp. 498, 499 (E.D. La. 1988). In the present case, Broussard has offered no evidence to show that the crane was anything more than a temporary fixture. If removable drilling rigs and bolted-down scaffolds are not considered appurtenances, then a temporary crane is likewise not an appurtenance. As such, Shell and TETRA did not owe a duty to ensure the safety of the temporary crane under premises liability.

### B. *Vicarious Liability*

Broussard argues that Shell and TETRA are liable for any negligent acts of their independent contractor—namely, the design, installation, and operation of an unsafe ladder by Energy Cranes—under a theory of vicarious liability. Dkt. 36 at 6. The general rule in Louisiana is that a principal is not liable for the negligent acts of its independent contractor unless: (1) the principal has hired the contractor to perform an ultrahazardous activity; or (2) the principal has retained operational control over the acts of the contractor. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549–50 (5th Cir. 1987). Neither party claims that the crane activities were ultrahazardous.

With regard to the second exception, for a principal to retain operational control over the activities of an independent contractor, the principal must have "direct supervision over the step-by-

6

step process of completing the work." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992) (quoting *Triplette v. Exxon Corp.*, 554 So.2d 1361, 1363 (La. App. 1 Cir. 1989)). Broussard argues that Shell retained operational control by contract and that both Shell and TETRA retained operational control by supervision.

### I. *Vicarious Liability by Contract*

Broussard alleges that Shell retained operational control over Energy Cranes' activities by reserving a contractual right to control the work (Dkt. 36 at 6). However, Energy Cranes is not a party to the contract cited by Broussard. Dkt. 36. The contract in question is between Shell and TETRA and simply reserves to Shell a general right to audit TETRA's work for safety compliance. Dkt. 36, Ex. C. Additionally, the language quoted by Broussard says that Shell "does not assume any responsibility to direct, control, or supervise [TETRA], its employees, agents, or subcontractors." Dkt. 36, Ex. A at 14. Energy Cranes was a subcontractor of TETRA over whom Shell had no contractual control. Dkt. 37 at 2. Yet, even if the contract were illustrative of Shell's supervision over Energy Cranes, it would not give Shell the step-by-step supervision required for operational control. A right to audit for compliance does not constitute operational control. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (quoting RESTATEMENT (SECOND) OF TORTS § 414, comment (c)). Therefore, Shell did not retain operational control and is not vicariously liable by contract.

### ii. *Vicarious Liability by Supervision*

In addition to the contractual argument, Broussard alleges that both Shell and TETRA exercised operational control over the design, installation, and operation of the crane by their day-to-day supervision. Dkt. 36 at 6. Defendants provided general crane requirements to Energy Cranes

(Dkt. 36, Ex. O at 43), inspected the crane–including the ladder–prior to usage (Dkt. 36, Ex. K at 31–32), and over the course of the project, occasionally took action based on safety concerns (Dkt. 36, Ex. E at 43).  On one occasion, Shell ordered a modification to a digital system on the crane to bring it in line with safety requirements.  Dkt. 36, Ex. E at 59–60.  On another, TETRA ordered a shut down of all crane operations due to high winds.  Dkt. 36 at 6.  Defendants were also consulted any time a crane operator wished to lift an object with the crane.  Dkt. 36, Ex. O at 26–27.  Broussard claims—without supporting case law—that these facts show defendants maintained operational control over the crane activities.  Dkt. 36 at 6.  Defendants, however, argue that control over the minutiae of the contractor's activities is needed for vicarious liability, and that the facts of the case do not show that level of control.  Dkt. 35 at 7.

      The case law on "operational control" clearly states that more than supervision is needed to impose a duty.  Defendants can only be said to have operational control over the design or installation of the crane and ladder if they gave "how to" instructions on either activity.  *Grammar v. Patterson Services, Inc.*, 860 F.2d 639, 645 (5th Cir. 1988).  Even if the principal provides its contractor with a safety manual, that has been found insufficient to demonstrate operational control.  *LeJeune*, 950 F.2d at 267.  Despite the submission of crane requirements to Energy Cranes, there is no evidence to suggest that Shell and TETRA retained any control over the design or installation of the ladder.  Moreover, Broussard himself testified that he controlled the "methods and manner" of moving the crane and did not require instructions on how to safely use a ladder.  Dkt. 35, Ex. D. at 190.  Absent a list of requirements detailing the "how to" of the design and installation, there is no evidence to suggest defendants' involvement was anything but specifying a desired result.  Defendants, therefore, cannot be held vicariously liable by supervision.

## Conclusion

As the crane and ladder were temporary and not appurtenant to the platform, Shell and TETRA did not owe a duty to Broussard to provide safe crane and ladder conditions under premises liability. Additionally, as Shell did not retain control through a contractual obligation and neither Shell nor TETRA controlled the "how to" of the design, installation, or operation of the crane and ladder, the defendants cannot be held liable for the potentially negligent acts of Energy Cranes. Consequently, the motions for summary judgment of Shell and TETRA are GRANTED.

It is so ORDERED.

Signed at Houston, Texas on July 15, 2010.

_____
Gray H. Miller
United States District Judge